## GUDMUNDSEN v. McENTYRE.

No. 4516.   Decided August 16, 1927.   (259 P. 196.)

*Joseph E. Richards,* of Salt Lake City, for appellant.

*Badger, Rich & Rich,* of Salt Lake City, for respondent.

GIDEON, J.

This action is to recover damages for the breach of a contract for the sale and purchase of real estate. Defendant had judgment in his favor. The trial court dismissed the action, and plaintiff appeals.

A copy of the contract is attached to and made a part of the complaint. The delivery of possession of the premises by plaintiff to defendant and the acceptance of possession

by defendant are alleged; also the subsequent breach of the contract on the part of defendant and the amount of damages claimed as resulting from such breach. It is also alleged that plaintiff performed all of the conditions of the contract on her part to be performed until notice was given to her by defendant that he would not comply with its terms. The answer admits the execution of the contract, denies other allegations of the complaint. As a further and separate defense it is set out in the answer that prior to the execution of the contract plaintiff represented to defendant that a cement walk appurtenant to the house then belonging to defendant and situated upon an adjoining lot extended upon the premises of plaintiff. It is further alleged that at said time and place plaintiff designated the location of the boundary line between the lot of plaintiff and that of defendant; that defendant relied upon the statements of plaintiff designating such boundary; and that if the representations then made by plaintiff had been true the walk appurtenant to defendant's building did extend over and upon the premises of plaintiff and by reason thereof defendant would have been required to remove the same. It is also alleged in the answer that plaintiff demanded that defendant remove the walk, and, in order to satisfy and appease her, and in order to meet her demand, and relying upon the truthfulness of the representations then made by her, the agreement set forth and described in the complaint was executed. It is further alleged that defendant was not familiar with the real estate nor with the premises nor with the location of the boundary lines thereof, but that plaintiff was so familiar.

The trial court made findings to the effect that the representations set out in the answer were made by plaintiff and that thereby defendant was induced to enter into the agreement. The assignments assail the findings.

The record without dispute discloses that in January, 1921, respondent was owner of lot 8 in block 167, townsite of Burley, Idaho, and that appellant was owner of lot 7 in

the same block, There was an apartment house on lot 8. The south wall of the apartment house is approximately 1 foot north of the boundary line as claimed by appellant and 2.5 feet north of the boundary line as established by a later survey. A cement walk or court extends from a "jog" near the center of the apartment house to its rear. The boundary line between the premises of appellant and the premises of respondent is the south boundary line of lot 8 and likewise the north boundary line of lot 7. The record is silent as to the length of time respondent had been the owner of lot 8. Appellant and her husband testified, and that testimony is without dispute, that they acquired title to lot 7 in 1913; that at that time there were stakes placed along the street on the west of the lot which purported to indicate the north and south boundaries of the lots in the block; that appellant constructed her dwelling upon lot 7 in conformity with the boundaries as indicated by the stakes and planted a hedge along the north boundary of her property on the line shown or indicated by the stakes; that prior to the execution of the contract in question the stakes had been removed or lost, but the hedge remained. It is therefore conclusively shown that appellant, in representing the boundary as claimed by respondent, did not willfully or intentionally misrepresent the boundary if she made the statements as testified to by respondent and as found by the court. The testimony of respondent is to the effect that he, in response to a letter from appellant received in February or in March, 1921, called at her home and that she then made the representations set out in his affirmative defense; that she advised him that he could ascertain the correctness of her statements by measuring from the sidewalk on the north to the point which appellant claimed was the true boundary. Appellant and respondent had not met prior to this occasion. Respondent's testimony is also that he did make such measurement from the sidewalk and ascertained thereby that the claim of appellant was correct; that to remove any part of the cement floor at the rear

of his building would require a change in the cellarway leading to the basement and also the stairway leading to the upper stories of the apartment house; that by reason of these considerations he entered into the contract. This witness also testified that within 60 days after the making of the contract he ascertained from the former owner of lot 8 that the claim of appellant was incorrect and he thereupon caused a survey to be made and determined that such representations were not true and that thereupon he immediately repudiated the contract and wrote to appellant stating that he would not complete the contract and that subsequently, on or about September 3, 1921, appellant again took possession of her property. Appellant's testimony in that regard is that she only represented to respondent that according to her survey and understanding the cement walk was over on her property and that she never at any time pointed out to respondent where there had been any stakes marking the boundaries between said lots. She, however, testified that her real grievance was not that the cement walk or court extended onto her premises but that the tenants in the apartment house were constantly trespassing upon her premises, not only in moving into and removing from the apartment house, but in permitting children to play upon her premises, hanging clothes on her lot, and otherwise disturbing her in the peaceful possession of her home. There was a dwelling upon lot 7 at that time occupied by appellant as a home.

The contract is dated May 3, 1921. On receipt of the letter by appellant from respondent advising her that he would not complete the contract, appellant's testimony is that she immediately wrote him that she would not consent to a rescission of the contract but would hold him to its terms.

In respondent's testimony he designates himself as a "special agent" for the state of Utah for the Western Loan & Building Company. In answer to an inquiry as to the character of his employment he said: "Well, I have to do

with making, appraising, and passing upon loans, value of property, looking after their various agencies all over the state of Idaho." He stated that he had been engaged in that business for 18 years and in the state of Idaho for 10 years. He was asked: "What character of property did you appraise?" He answered: "Well, city property. Q. Exclusively? A. Yes, sir." He further testified that he had appraised and become familiar with property in Burley and particularly during the year 1921 was he familiar with real estate values in that city. He then recited at length the negotiations which led up to the execution of the contract in question.

It is the contention of appellant that respondent was not misled by any representations made by her; that he had the same opportunity she had to know and ascertain the location of the true boundary line between their premises; and that nothing was said or done on the part of appellant to prevent respondent from ascertaining and determining the location of the boundary between said lots; and, further, as we understand appellant's contention that as matter of law appellant must be presumed to have known the location of the particular boundaries of his own land. There was a plat introduced in evidence showing the location of the lots and the boundry lines between lots 7 and 8. That plat was prepared by one Frank Beach, a civil engineer who resides in Burley. Mr. Beach was called as a witness for respondent. On cross-examination he stated, quoting from the abstract.

"The monument of the original survey in the center of the street was easy to discover, and there was a map available in the city showing where the monument would be found. I determined this boundary line in less than half a day. It could have been done any time in the last ten years with an equal amount of labor."

It appears also from this witness' testimony that the monument from which the survey was made establishing the boundary lines of the lots in block 167 was in the street immediately north of lot 8 and was the recognized monument

from which surveys were made to determine the location of the boundary lines of the respective lots in that block.

The question here to be determined is whether under the facts shown the respondent was justified or legally authorized to rescind the contract by reason of the representations claimed to have been made by appellant and upon which he relied. The rights of the parties in proceedings of this nature must be determined very largely from the facts of each case. It should be kept in mind that respondent was the owner of lot 8; that the south boundary of his lot was the north boundary of lot 7. It is the location of this boundary line that respondent claims was misrepresented to him, and which misrepresentation induced him to enter into the contract.

The general principles of law applicable to the facts in this record are stated in many of the cases and by numerous text-writers. The various courts and text-writers in stating these principles use strikingly similar language. In 1 Story Eq. Jur. (13th Ed.) § 193, it is said:

"Whether the party thus misrepresenting a material fact knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial; for the affirmation of what one does not know or believe to be true is equally in morals and law as unjustifiable as the affirmation of what is known to be positively false. And even if the party innocently misrepresents a material fact by mistake, it is equally conclusive; for it operates as a surprise and imposition upon the other party."

Section 200 a, same volume, is:

"On the other hand if the purchaser, choosing to judge for himself, does not avail himself of the knowledge or means of knowledge open to him or his agents, he cannot be heard to say that he was deceived by the vendor's misrepresentations; for the rule is 'caveat emptor.' * * * It is his own folly and laches not to use the means of knowledge within his reach, and he may properly impute any loss or injury in such a case to his own negligence and indiscretion. Courts of equity do not sit for the purpose of relieving parties, under ordinary circumstances, who refuse to exercise a reasonable diligence or discretion."

In section 151 of the same volume the author, under the title "Mistake," says:

"Mistake or ignorance of facts in parties is a proper subject of relief only when it constitutes a material ingredient in the contract of the parties and disappoints their intention by a mutual error, or where it is inconsistent with good faith and proceeds from a violation of the obligations which are imposed by law upon the conscience of either party. But where each party is equally innocent, and there is no concealment of facts which the other party has a right to know, and no surprise or imposition exists, the mistake or ignorance, whether mutual or unilateral, is treated as laying no foundation for equitable interference. It is strictly damnum absque injuria."

The Supreme Court of New York, in *Clarke* v. *Baird,* 7 Barb., at page 66, quotes from Chancellor Kent as follows:

" 'The common law affords to every one reasonable protection against fraud in dealing, but it does not go the romantic length of giving indemnity against the consequences of indolence and folly, or careless indifference to the ordinary and accessible means of information.' * * * 'If the purchaser be wanting of attention to these points where attention would have been sufficient to protect him from surprise or imposition, the maxim caveat emptor ought to apply.' "

Applying these general principles to the particular facts in this case as shown by this record, and in view of the further fact that respondent could have, if he were ignorant of the location of the boundary lines of his ▪ own land, by the exercise of any degree of diligence, ascertained the true location of the boundary, we can see no escape from the conclusion that respondent had no sufficient legal reason or justification for repudiating the contract. Respondent was engaged in an occupation that required him to examine property, ascertain its location, its value, and determine from such examination what amount his principal, the loan and building company, would be justified in lending upon such property. Necessarily, in the exercise of these duties he must be presumed to have known

that he should be advised of and know the location of the boundary lines of the property and must have been familiar with the method and means of ascertaining the true location of the boundary lines of premises upon which he proposed to recommend to his principal that a loan be made. His company had made loans secured by property in Burley. Respondent therefore was not, by reason of inexperience or lack of knowledge of the location of property in that community, or by reason of friendly or confidential relations between himself and appellant, to be excused from exercising ordinary diligence in ascertaining the true location of the boundary line between his own property and that of appellant. It is in evidence that respondent did make some investigation to ascertain the truthfulness of the representations of appellant. He determined the south boundary of his property by measuring from the sidewalk on the street north of his property. His reason for selecting the sidewalk as a monument from which to determine his boundary line, as testified to by him, is that appellant told him to measure from that point. Sidewalks in cities have never been recognized even by the inexperienced in real estate transactions as monuments for determining the location of boundaries, much less by those experienced as was respondent, who had to do with real estate in cities "exclusively" for a period of 18 years. The knowledge that respondent must be presumed to have had as to the method of determining the location of boundary lines of city lots should or ought to have suggested to him that of necessity there were placed monuments by the original survey of the townsite from which correct measurements could have been made and that these monuments were readily and easily locatable. Respondent, for some reason, did not see fit to avail himself of this information. His failure to go further in his efforts to locate the true boundary lends some support to appellants's claim that the real consideration for the making of the contract was the wish of respondent to have lot 7 for the convenience of the tenants of his apartment

house. As the writer views this record, it is somewhat incongruous to permit the defense of claimed ignorance or lack of knowledge of the exact location of the boundary line of respondent's own lot such as was interposed in this action. Actual knowledge of the untruth of representations claimed to have been made or means by which the truth or untruth of such representations may be readily ascertained in the exercise of reasonable diligence will deny the right of rescission of a contract otherwise legal and deliberately entered into and cannot be interposed in a trial either affirmatively or defensively.

The contract in this case was for the sale and purchase of lot 7. There can be no question, therefore, but that respondent, had he completed the contract, would have received the actual property which he contracted to purchase. In that respect the facts in the instant case are different from the facts in many of the cases reviewed by the courts wherein the conveyances did not describe the actual properties which the parties had in contemplation when making the contracts, and for such reasons the courts held there were no meetings of minds upon the subjects of the contracts.

The price of this land stipulated in the contract was $6,000. The trial court made no finding as to the value of the property at the time of the breach. The only finding in that respect is to the effect that there was no change in he market value of the premises described in the complaint and in the contract between the date of entering into the contract and the date when appellant repossessed the property on September 3, 1921. Appellant was entitled to the benefit of her contract whether the contract stipulated the true market value or otherwise. If the property was of less value than that specified in the contract at the time of the attempted rescission, that difference would measure appellant's damages.

It is further argued on behalf of the respondent that the

judgment dismissing the complaint should be affirmed by reason of certain stipulations or provisions contained in the contract. The particular portion of the contract referred to is as follows:

"In the event of failure on the part of the second party (McEntyre) to fully comply with the terms hereof, she (Mrs. Gudmundsen) shall be released from all obligations in law or equity hereunder and said escrow agent is hereby authorized to deliver back to her said warranty deed and said quitclaim deed."

It is contended that the repossession of the property on September 3, 1921, by appellant was the extent of her rights, and that thereafter not only was she but the respondent released from any further liability. The contract does not attempt to release the respondent from his obligations in the event of failure on his part to comply with his contract. The respondent had broken the contract, not only by failure to make the payments as therein stipulated, but, as admitted by him, in a letter addressed to the appellant advising her that he would not longer meet the terms of the contract. The appellant was justified in repossessing the property by reason of the breach of the contract on the part of the respondent regardless of any provisions in the contract. The section of the contract quoted, however, does not attempt to limit the appellant's rights under the contract. It simply states that she is released from any obligations assumed by her. Neither by express words nor by implication does it release the respondent from the obligations assumed by him. The contract was a valid contract when made. A breach on the part of either party necessarily, at the election of the other, subjects the party breaking the contract to damages. The language of the contract quoted does not attempt to impose a penalty on the part of the party breaking the contract nor to fix the amount of damages that the appellant may have sustained by reason of the breach. No case is cited that supports the claim of the respondent under language similar to that found in this contract.

Our conclusions therefore are that under the facts shown in this record, respondent cannot be heard to interpose any alleged statements made to him by the appellant respecting the location of the boundary line as a defense in this action. Nor do the words of the contract deny to the appellant her right to claim damages for the breach on the part of respondent. The judgment is reversed and new trial ordered. Appellant to recover costs.

THURMAN, C. J., and CHERRY and HANSEN, JJ., concur.

STRAUP, J. (dissenting). On the record I think the judgment should be affirmed. The defendant resided in Richfield, Utah, the plaintiff in Burley, Idaho, where the property in question was situated. The court found the defendant was not, but that the plaintiff was, familiar with the real estate in question and the boundary lines thereof; that the plaintiff materially misrepresented such boundary lines to the defendant; and that he in entering into the contract relied, and had the right to rely, on the representations made to him. It is claimed he ought not to have relied on the representations, and in fact did not rely on them; that he with a tapeline measured the dimensions of the property and found the boundary lines to be as the plaintiff represented them to him. True, he made such a measurement, but took the initial point of measurement as indicated by plaintiff, which was an incorrect and improper point, but which was then believed by the defendant to be a proper and correct point and as was represented to him by the plaintiff. Shortly after the contract of purchase was entered into and the defendant had entered into the possession of the property, the plaintiff made a claim as to the boundary line which was materially in conflict with what she had theretofore represented to the defendant. He thereupon caused a survey to be made and found that the true bound-

ary line, to his injury, was misrepresented to him by the plaintiff. After some unsuccessful correspondence between the parties respecting the matter, the defendant rescinded and repudiated the contract. I think the case falls within the doctrine that when the vendor undertakes to point out to the purchaser the boundaries of his land he is under obligation to point them out accurately; and, though a purchaser has it in his power by a survey to establish the true boundary, such does not preclude him from relying on the representations of the vendor, and this, too, though there may have been no intentional misrepresentation by him. 27 R. C. L. 374. Upon such theory the findings of the court below proceed, which, in the record, as I think, are supported by good and sufficient evidence, though in some particulars in conflict. But with respect thereto, we, in a law case, as this is, are not concerned with the comparative weight of such conflicting evidence nor with the credibility of the witnesses.

In the next place the court found that there was no change whatsoever in the market value of the property between the date of the contract, May 3, and September 3, 1921, at which time the plaintiff repossessed the property, and that the plaintiff was not damaged in any amount whatsoever, and that prior to the commencement of the action the plaintiff withdrew her deed to the property and which was placed in escrow at the time the contract of purchase was entered into. True, the court did not specifically find that the contract price of the property was the then market value of the property, but the finding as made implies that the contract price was no more nor greater than the then market value. Evidence was adduced as to the market value of the property when the contract was made and when the property was repossessed by the plaintiff. While the evidence is in conflict, yet there was good and sufficient testimony adduced by disinterested and qualified witnesses to show that the contract price was no more, and, if any difference, was less

than the then market value, and that between that time and when the plaintiff repossessed the property there was no change in the market value of the property and that it then was worth as much as when the contract was entered into. Indeed, evidence was given to show that when the contract was entered into the plaintiff claimed and asserted that the market or real value of the property exceeded the contract price. The property consisted of a house and lot in Burley. The contract of purchase was entered into May 3, 1921, and provided a cash payment of $200, which was then paid, the further sum of $50 on September 4, 1921, and $50 on the 4th day of each month thereafter until April 4, 1924, at which time the defendant was required to pay the additional sum of $6,000 without interest, or, at his option, $4,000 cash without interest and execute two notes of $1,000 each, to be secured by a mortgage on the premises, at which time the deed executed by the plaintiff and put in escrow was to be delivered to the defendant. It was shown by the evidence that the rental of the premises was considered by the parties to be $50 a month. On July 15, 1921, when the defendant had the survey made of the property and discovered the misrepresentations as to the boundary, he wrote the plaintiff repudiating the contract and directing her to repossess the property. The defendant in the meantime had made the $200 cash payment and made some improvements on the premises, all of which were forfeited by him. The plaintiff, about the middle of August, 1921, wrote the defendant that she would release him on the contract if he paid her an additional sum of $150 as damages, which the defendant declined to do, and thereupon, on September 3, 1921, the plaintiff repossessed the property and thereafter received all of the rents and profits therefrom. Thus on the record I think there is ample evidence to support the finding that the plaintiff was not damaged, at least not in any substantial amount.